IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:23CR3045** |
| vs. | **AMENDED** |
| JOHN FRANCIS, | **FINDINGS, RECOMMENDATION AND ORDER** |
| Defendant. | |

This matter is before the Court on Defendant John Francis' motion to suppress. Filing No. 43. Defendant seeks to suppress any and all evidence obtained as a result of the traffic stop and subsequent search of his vehicle on March 4, 2023. Defendant contends there was not probable cause to stop his vehicle. Further, at the March 14, 2024 hearing, Defendant argued, for the first time, the subsequent search of Defendant's vehicle was improper because it was not conducted to inventory the vehicle's contents.[1] The Court stated the motion would be deemed submitted upon receipt of the transcript. The Transcript was filed on April 5, 2024. This matter is now ripe for disposition.

For the reasons explained below, Defendant's motion should be denied.

---

[1] Defendant argued the testimony adduced at the hearing was inconsistent with evidence he received in discovery. This alleged inconsistent evidence was never before the Court. The Court re-opened the hearing to allow the opportunity to present evidence on the issue raised for the first-time during closing arguments. Filing No. 56 at 80.

1

STATEMENT OF FACTS

After reviewing the evidence admitted at the hearing and observing the testimony of Defendant and Deputy Tyson Osborn, the undersigned magistrate judge finds the following facts are credible.

On March 4, 2024, Deputy Osborn was working for the Saline County Sheriff's Office as part of a Seward County Sheriff's Office task force. Filing No. 56 at 35. Around 3:11 p.m. Deputy Osborn was in his marked patrol car parked in the median near Pleasant Dale, Nebraska on Interstate 80 observing traffic. Filing No. 56 at 20. At some point Deputy Osborn's attention was drawn to a Chevy Tahoe (the "Vehicle") traveling west in the outside lane. *Id*. Deputy Osborn testified the driver of the Vehicle, later identified to be Defendant, drew his attention because he had a hood over his head, a fact Deputy Osborn considered suspicious. *Id*. at 23-24. Deputy Osborn then began following Defendant. *Id*. at 25.

Deputy Osborn testified that after following Defendant for some time he observed Defendant's "tires br[eak] the fog line and dr[i]ve onto the fog line." Filing No. 56 at 30. Deputy Osborn testified he believed this to be a violation of Neb. Rev. Stat. § 60-6,142, driving on the shoulder. Filing No. 56 at 29. Shortly thereafter, Deputy Osborn activated his emergency overhead lights and attempted to stop the vehicle. *Id*. at 7, 48-50. When Deputy Osborn activated his lights, Defendant did not pull over. *Id*. at 11-14, 51; Filing No. 53, Exhibit 1. Deputy Osborn continued to pursue the vehicle and was joined by other law enforcement agencies including the Nebraska State Patrol, York County Sheriff's Office, and Hamilton County Sheriff's Office. *Id*. at 52.

At times during the pursuit, Deputy Osborn lost visual contact of the Vehicle because his patrol car was not fast enough. Filing No. 56 at 51. During these times, Deputy Osborn was not the first emergency vehicle behind the suspect. *Id*. at 53.

2

Deputy Osborn's patrol unit camera reflected that he was traveling more than 115 miles per hour. Filing No. 53, Exhibit 1 at 4:00.

Approximately 28 minutes into the pursuit, a Nebraska State Trooper threw spike strips onto the interstate and successfully punctured the Vehicle's tires. Filing No. 56 at 54-57; Filing No. 53, Exhibit 1 at 26:54-28:08. The Vehicle then came to a stop in the middle of the interstate and Defendant exited the Vehicle with his hands in the air. Filing No. 53, Exhibit 1 at 28:45; Filing No. 56 at 57-59. The pursuit ended near mile marker 327, which was 50 miles from where it began. Filing No. 56 at 59.

Shortly after the Vehicle came to a stop, a law enforcement officer moved the Vehicle into the median. Filing No. 53, Exhibit 1; Filing No. 56 at 82. Deputy Osborn testified that when he approached the Vehicle he observed a handgun in the console of the Vehicle. Filing No. 56 at 33.

Deputy Osborn testified the Defendant was arrested on flight to avoid arrest. Filing No. 56 at 82. He further testified that when the sole occupant of a vehicle is arrested, the Seward County Sheriff Office's policy is to tow and inventory the vehicle. Id. Because Deputy Osborn was operating with the Seward County task force, the Seward County policy was applicable. Id. Deputy Osborn testified that because Defendant was under arrest, he conducted an inventory search of the vehicle. Id. at 82-83. Prior to searching the vehicle, he observed the handgun in the center console. Id. at 33, 83. In addition to the handgun recovered, a clear plastic heat-sealed bag of narcotics was also found during the search. Id. at 32.

Defendant was indicted for allegedly violating 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, and (b)(1)(C) and 18 U.S.C. § 924(c)(1)(A)(i), carrying or using a firearm during and in relation to a drug trafficking crime. Filing No. 1.

ANALYSIS

Defendant seeks to suppress any and all evidence obtained as a result of the traffic stop and subsequent search of his vehicle on March 4, 2023. Defendant contends there was not probable cause to stop his vehicle. Further, at the March 14, 2024 hearing, Defendant argued, for the first time, the subsequent search of Defendant's vehicle was improper because it was not conducted to inventory the vehicle's contents.

**1. Stop of the Vehicle**

The Fourth Amendment protects against unreasonable searches and seizures, including unreasonable traffic stops. See *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021). "Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). The Eighth Circuit has repeatedly held that "even a minor traffic violation provides an officer with probable cause to stop the driver." *Id.* at 979 (citing *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008)). This is true even if a valid traffic stop is a pretext for other investigation. *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996).

Defendant contends that Deputy Osborn did not have probable cause to stop his vehicle because he did not violate Neb. Rev. Stat. § 60-6,142, driving on the shoulder of a highway, or any other traffic violation. Rather, Defendant contends Deputy Osborn's stated reason for the stop was simply pretextual. As detailed below, Defendant's arguments are unpersuasive.

First, Deputy Osborn testified that the initial reason for initiating the stop of Defendant's vehicle was for violating Neb. Rev. Stat. § 60-6,142, driving on the

shoulder of a highway. Filing No. 56 at 29. Specifically, Deputy Osborn testified he observed Defendant drive onto the fog line while traveling westbound on interstate 80 near mile marker 388 in Seward County, Nebraska. *Id*. at 30. Defendant argues that driving onto a fog line, but not crossing the fog line, is not a violation of Neb. Rev. Stat. § 60-6,142. Thus, he argues there was no law violation creating reason to stop his vehicle.

Defendant does admit, however, that he observed law enforcement following him with lights and sirens and he "panicked" and "did not immediately stop the vehicle." Filing No. 56 at 11, 14. Despite this, Defendant asserts that all the evidence seized, and statements obtained after the police pursuit must be suppressed as fruits of an illegal stop. Filing No. 43-1 at 4.

Defendant contends this case turns on whether Defendant violated Neb. Rev. Stat. § 60-6,142 when he allegedly drove on, but did not cross, the white fog line that separates the road from the shoulder. Filing No. 43-1 at 3. The Court finds it unnecessary to reach that question because, as the Eighth Circuit has held, "resistance to even an illegal stop or arrest can furnish grounds for a legitimate arrest." *United States v. Pickens*, 58 F.4th 983, 988 (8th Cir. 2023) (citing *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006)). "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Sledge*, 460 F.3d at 966 (quoting *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir.1982)). The Court therefore turns to whether Defendant committed any other law violations giving officers probable cause to stop and arrest him.

Defendant undoubtedly did not stop his vehicle when he observed a law enforcement officer behind him with his lights and sirens on. Filing No. 53, Exhibit 1. He admitted to that. Filing No. 56 at 11, 14. This alone was sufficient for Deputy Osborn to have a reasonable basis for believing the Defendant had breached a

5

traffic law, namely, operating a motor vehicle to avoid arrest. See Neb. Rev. Stat. § 28-905. Further, not only was Deputy Osborn pursuing Defendant with lights and sirens, but Defendant was pursued by at least three other law enforcement officers with lights and sirens for approximately 30 minutes and over 50 miles. Filing No. 53, Exhibit 1 at 28:20; Filing No. 56 at 51. Despite Defendant's characterization of his apprehension, Defendant did not simply pull over and exit the vehicle. Rather, spike strips were deployed to deflate Defendant's tires. Filing No. 53, Exhibit 1 at 26:50-26:58; 28:05-28:55.

Much of the evidence adduced at the hearing centers on whether the government has proven that Defendant exceeded the speed limit after Deputy Osborn activated his patrol lights. Filing No. 56 at 69-75. While not determinative, the Court finds sufficient evidence to find Defendant was exceeding the posted speed limit of seventy-five miles per hour.[2]

Deputy Osborn testified that he underwent training to estimate the speed of vehicles, he regularly used that training throughout his career, and the speed reflected on his cruiser video was consistent with this training. Filing No. 56 at 45-46; 58. He further testified that he had no reason to believe his cruiser equipment was not functioning correctly, he noted his cruiser was too slow to keep up with Defendant's vehicle, and both he and Defendant's vehicle passed numerous other cars driving on the interstate. Id. at 59-60. Moreover, Deputy Osborn testified that he pursued Defendant for approximately 50 miles and the video evidence reflects the pursuit lasted approximately 29 minutes. Filing No. 53, Exhibit 1; Filing No. 56

---

[2] The Court takes judicial notice of Neb. Rev. Stat. 60-6,186 which provides that the maximum speed limit for Interstate 80 is seventy-five miles per hour. See McIndoo v. Burnett, 494 F.2d 1311, 1313 (8th Cir. 1974) ("[T]he law of any state of the Union, whether depending upon statutes or upon judicial opinions is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

6

at 51. Simple math[3] demonstrates Defendant was traveling an average of 107 miles per hour.

"[A]t a minimum, there must be sufficient indicia of reliability for a court to credit as reasonable an officer's visual estimate of speed." *United States v. Gaffney*, 789 F.3d 866, 869 (8th Cir. 2015) (quoting *United States v. Sowards*, 690 F.3d 583, 591-93 (4th Cir. 2012). Further, the Eighth Circuit emphasized that [t]he issue is whether the totality of the circumstances at the time of the stop supports the reasonableness of the officer's belief that [the defendant] was speeding at all." *Id*. at 869 (citing *United States v. $45,000 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir. 2014)). Even though Deputy Osborn was not running radar to provide Defendant's precise speed, based on Deputy Osborn's credibility, training, the video evidence, and the distance traveled by Defendant, it was reasonable for an officer to believe Defendant was traveling in excess of the posted speed limit. *See United States v. Green*, 946 F.3d 433, 438 (8th Cir. 2019) (holding that the district court's finding that the vehicle was speeding based on the officer's credibility, training, and video evidence was not clearly erroneous). Therefore, Deputy Osborn had probable cause to stop the vehicle for speeding. *See* Neb. Rev. Stat. § 60-682.01. Because of Defendant's high rate of speed, the highly populated roadway, the fact he was fleeing law enforcement and did not stop on his own also provided Deputy Osborn probable cause to believe Defendant committed willful reckless driving in violation of Neb. Rev. Stat. § 60-6,214. *See State v. Scherbarth*, 24 Neb. App. 897, 906-07 (2017) (noting willful reckless driving commonly involves a combination of a high level of speeding that is particularly dangerous based on the circumstances such as a heavily populated roadway or fleeing arrest).

---

[3] A court may properly take judicial notice of the mathematic formula of distance divided by time equals speed. *U.S. v. Sowards*, 690 F.3d 583 (4th Cir. 2012).

7

The Court finds Defendant committed multiple traffic violations when he led officers on a high-speed chase for over 50 miles, reaching speeds of more than 115 miles per hour, weaving through traffic, and ultimately stopping only after law enforcement deflated his tires with spike strips. Defendant's resistance to the allegedly illegal stop created grounds for a legitimate stop and arrest. Therefore, his motion to suppress should be denied.

**2. Search of the Vehicle**

At the March 14, 2024 hearing, Defendant argued, for the first time, that the search of Defendant's vehicle was improper. Filing No. 56 at 71. He contends the testimony adduced at the hearing revealed that the search was not for the purpose of inventorying the vehicle and thus, did not fall under the inventory exception to the warrant requirement. *Id*.

Searches conducted without a warrant are considered "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Inventory searches are one such exception. *United States v. Morris*, 915 F.3d 552, 556 (8th Cir. 2019). In this capacity, officers are not investigating a crime, but rather, are "performing an administrative or caretaking function." *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 n.5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

More specifically, "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015) (citation omitted). As the Eighth Circuit has repeatedly stated, officers "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *United States v. Petty*, 367 F.3d 1009, 1013

8

(8th Cir. 2004) (emphasis added) (citation omitted); *see also* United States v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994) ("The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search.").

Deputy Osborn testified that, pursuant to Seward County Sheriff's Office policy, Defendant's vehicle would be inventoried and towed upon Defendant's arrest. Filing No. 56 at 82-83. He further testified that he conducted the inventory search of the vehicle because Defendant was being arrested for flight to avoid arrest. *Id*. Defendant's argument that Deputy Osborn's testimony on direct examination is somehow contradictory is without merit.[4] When questioned by Defendant, Deputy **Osborn** testified that the search of the vehicle "followed" his observation of the handgun. Filing No. 56 at 33; 84. He later clarified that he had observed the gun prior to conducting his inventory search and his decision to search the vehicle was not based solely on the gun. *Id*. at 84.

The Court finds the inventory exception to the warrant requirement is applicable and the search of Defendant's vehicle was not improper. Therefore, Defendant's motion to suppress should be denied.

For the reasons stated above,

IT HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Senior United States District Judge, that defendant's motion to suppress, Filing No. 43, be denied in its entirety.

---

[4] Defendant argued that Deputy Osborn's testimony on direct examination was inconsistent with a statement he made on video in Exhibit 1. Filing No. 56 at 76. However, Exhibit 1 is Deputy Osborn's dashcam video and there is no audible dialogue as referenced by Defendant. No other video of the scene was ever offered or admitted into evidence.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

FURTHER, IT HEREBY IS ORDERED,

A telephonic conference with counsel will be held before the undersigned magistrate judge at 11:00 a.m. on May 28, 2024 to discuss setting any change of plea hearing, or the date of the jury trial and deadlines for disclosing experts as required under Rule 16. Counsel for all parties shall use the conferencing instructions provided by the court to participate in the call.

Dated this 30th day of April 2024.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge