IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:23CR3045 |
| vs. | **FINDINGS, RECOMMENDATION AND ORDER** |
| JOHN FRANCIS, | |
| Defendant. | |

This matter is before the Court on Defendant John Francis' motion to dismiss and request for hearing. Filing Nos. 42 and 60. Francis moves to dismiss the underlying indictment arguing that 18 U.S.C. § 924(c)(1)(A) violates the Second Amendment. After additional briefing by the parties, this matter is now ripe for disposition. For the reasons explained below, the undersigned recommends Defendant's motion should be denied.

Francis moves to dismiss the indictment arguing that 18 U.S.C. § 924(c)(1)(A) is unconstitutional under the Supreme Court's ruling in *New York State Rifle & Pisol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Filing No. 42. Citing *Bruen*, Francis argues that § 924(c)(1)(A) violates the Second Amendment because the prohibition of possession of a firearm in relation to a drug trafficking crime is inconsistent with the nation's tradition of firearm regulation. Filing No. 42 at 3. He appears to make both a facial and as-applied challenge. Filing No. 42.

1

An as-applied challenge requires courts to examine a statute based on a defendant's individual circumstances. See *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021). A facial challenge is a claim that "the law or policy at issue is unconstitutional in *all* its applications," regardless of the individual circumstances. *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (emphasis added). There must be no set of circumstances where the statue would be valid. *United States v. Salerno*, 481 U.S. 739, 745, (1987). Here, the undersigned believes both challenges fail, and recommends that Defendant's motion should be denied.

As an initial matter, the Court must determine whether to rule on Francis' motion before or after trial. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The Court must decide a pretrial motion before trial unless the Court "finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). Good cause exists when the motion is "bound up in facts that require[] jury determination." *United States v. Gilliam*, 934 F.3d 854, 859 n.3 (8th Cir. 2019). Based on the record in this case, the Court does not find good cause to delay a decision on Francis' motion until after trial as the Court can rule on the motion without awaiting a jury determination. See *United States v. Peck*, No. 8:20CR227, 2023 WL 2351697 (D. Neb. Mar. 3, 2023). "[T]rial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity" of Francis' motion to dismiss. *Turner*, 842 F.3d at 604 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). As detailed below, the Court can rule on Francis' motion without awaiting a jury determination.

The Supreme Court explicitly recognized an individual right to keep and bear arms in *Dist. of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Most recently, the Court clarified how to identify the constitutional protections of the Second Amendment in *N.Y. State Rifle & Pistol Ass'n v. Bruen*:

> [W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). In so holding, the Supreme Court explicitly rejected a widely used two-step approach, where courts employed both historical analysis and means-end scrutiny. *Heller*, the Court explained, did "not support applying means-end scrutiny in the Second Amendment context," and a firearm regulation is only constitutional if it is consistent with the Nation's historical tradition. *Id*. at 19.

*Bruen* introduced a different two-part test. *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024). Under *Bruen*, "[w]hen the Second Amendment's plain text covers an individual's conduct, the constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126. To justify a regulation of such conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. Step one provides the textual threshold: does a law prohibit "conduct" that "the Second Amendment's plain text covers"? *Bruen*, 597 U.S. at 17. Crossing that threshold leads to step two, "historical understanding": is "the regulation . . . consistent with this Nation's historical tradition of firearm regulation"? *Id*. This test applies to both a facial and as-applied challenge. *Veasley,* 98 F.4th at 909.

In this case, the Court assumes without deciding that § 922(c)(1)(A) "governs conduct that falls within the plain text of the Second Amendments." *United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023). That is, that a drug trafficker

is "part of 'the people' whom the Second Amendment protects."[1] *Bruen*, 597 U.S. at 31-32. So, the Court turns to whether § 922(c)(1)(A) fits within America's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 17

The Eighth Circuit first considered the historical tradition of firearm regulation post *Bruen* in *United States v. Jackson*, 69 F.4th 495 (2023). There, the court held that the prohibition of possession of firearms by convicted felons, § 922(g)(1) is constitutional. *Id*. at 505. In doing so, the Eighth Circuit recognized that, historically, the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people.

The Eighth Circuit explored two lines of reasoning that provide the historical basis for firearm prohibitions. First, the Eighth Circuit recognized that legislatures have longstanding authority and discretion to disarm citizens who are not "law-abiding" or those who are "unwilling to obey the government and its laws, whether or not they demonstrated a propensity for violence." *Jackson*, 69 F.4th at 502 (quoting *Range v. Att'y Gen.,* 53 F.4th 262, 269 (3d Cir. 2022) (per curiam), *vacated*, 69 F.4th 96 (3d Cir. 2023)). More specifically, the *Jackson* court pointed to several broad historical restrictions of firearms including restrictions that the English government imposed on nonconformists who refused to participate in the Church of England and would not obey the King and abide by the law as well as restrictions legislatures in colonial America imposed on those of certain religious groups, ethnic groups, and those who refused to declare an oath of loyalty. *Id*. at

---

[1] There is an argument that Francis is not one of "the people"" who the Second Amendment has historically extended both because if subject to § 922(c)(1)(A) he is not a "law-abiding, responsible citizen," see *Range v. Att'y Gen*., 53 F.4th 262, 269 (3d Cir. 2022) (per curiam), vacated, reh'g en banc granted, 56 F.4th 992 (3d Cir. 2023), and because it appears he is not a United States citizen (and may be an unlawfully present alien). See *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023). However, based on the other conclusions reached herein, the Court finds it unnecessary to make a determination on the issue.

502-503. These disarmaments were not to address a person's demonstrated propensity to violence, but a threat purportedly posed to an orderly society. *Jackson*, 69 F.4th at 503-504.

Second, the Eighth Circuit recognized a narrower reading of a legislature's historic authority of prohibiting possession of firearms by those who are deemed "more dangerous than a typical law-abiding citizen." *Jackson*, 69 F.4th at 503-504. As to both interpretations, the Court reviewed restrictions on the possession of firearms dating back to the late 1600s up and through colonial America. *Id*. at 504. *Both* lines of reasoning, that is, considering whether someone is law-abiding or dangerous, pass muster under historical analysis. *Id*. (emphasis added).

In *Jackson*, the Court concluded Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. More recently, the Eighth Circuit similarly rejected a facial challenge to 18 U.S.C. § 922(b)(3), unlawful possession of a firearm by someone who is using or addicted to a controlled substance. *Veasley*, 98 F.4th 906. The Court again emphasized that colonial-era laws sought to keep guns out of the hands of those society deem dangerous. *Id*., at 915.

The same can be said about 18 U.S.C. § 924(c)(1)(A). Prohibiting the carrying or use of a firearm during and in relation to a drug trafficking crime is within the historical tradition and consistent with the Second Amendment. As to the first theory—disarming citizens who are not "law-abiding"—a necessary element of the offense is a conviction for the underlying crime of drug trafficking. Therefore, there is no circumstance under which a person would be "law-abiding" and also subject to § 924(c)(1)(A). This alone is sufficient to find § 924(c)(1)(A) constitutional.

If the historical regulation of firearms possession is viewed instead as an effort to address a risk of dangerousness, then § 924(c)(1)(A) still passes constitutional muster. The Eighth Circuit has highlighted the connection between

drug trafficking, dangerousness, and weapons. *See*, e.g., *United States v. Graham,* 779 F. App'x, 410, 412 (8th Cir. 2019) (stating that a particular sentencing "enhancement for weapon possession ... reflects the increased danger of violence when drug traffickers possess weapons") (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)); *United States v. Navarette-Barron*, 192 F.3d 786, 791 (8th Cir. 1999) (finding a Terry stop permissible in "light of the dangerous nature of the suspected crime of drug trafficking and the good possibility the driver or passenger had a weapon").

Moreover, the present statute prohibiting possession while drug trafficking focuses on conduct not status. *See Veasley*, 98 F.4th at 916. Possession of a firearm under § 922(c)(1)(A) must accompany other conduct—drug trafficking. In that way, it is analogous to the Founding-era criminal prohibition on taking up arms to terrify the people. *Id.* citing George Webb, *The Office of Authority of the Justice of the Peace* 92–93 (Williamsburg, William Parks 1736) (discussing Virginia law); *see also* Act For the Punishing of Criminal Offenders, Ch. 11, 96 (1692), *reprinted in The Charters and General Laws of the Colony and Province of Massachusetts Bay* 237, 240 (Boston, T.B. Wait & Co. 1814); Statute of Northampton, 2 Edw. 3, c.3 (1328). As noted in *Veasley*, those historical statutes required more than mere possession of a firearm. *Veasley,* 98 F.4th at 917. Section 922(c)(1)(A) similarly requires more than just mere possession of a firearm. Rather it requires another act, drug trafficking, which the Eighth Circuit has acknowledged is dangerous behavior. *Graham,* 779 App'x at 412. "The decision to engage in illegal and dangerous conduct, in other words, is what leads to a temporary deprivation, which ends once the illegal behavior does." *Veasley,* 98 F.4th at 917. In that way, § 922(c)(1)(A) imposes a "comparable burden" on the right to bear arms. *Id.* (citing *Bruen*, 597 U.S. at 29).

"[H]istory supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society," or who are not "law-abiding" citizens. *Jackson*, 69 F.4th 495 at 504 (citing *United*

6

*States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011)). There is also support for the authority to limit firearms possession as an effort to address a risk of dangerousness. *Jackson*, 69 F.4th at 504, *Veasley*, 98 F.4th at 917. Furthermore, there are Founding-era criminal prohibitions that are analogous to § 924(c)(1)(A). *See* Veasley, 98 F.4th at 916 citing *The Charters and General Laws of the Colony and Province of Massachusetts Bay* 237, 240 (Boston, T.B. Wait & Co. 1814); Statute of Northampton, 2 Edw. 3, c.3 (1328). Therefore, § 924(c)(1)(A) passes constitutional muster. For the reasons set forth herein, the undersigned finds Defendant's facial challenge should fail.

Francis appears to argue that § 922(c)(1)(A) is unconstitutional as applied to him arguing that his offense was "non-violent" as he did not brandish or discharge the firearm, and thus the theories behind the historical prohibitions are not analogous. But, as discussed above, not all of the analogous historical prohibitions are premised in dangerousness. *See Jackson*, 69 F.4th at 502 (discussing authority to disarm those unwilling to obey the government and its laws regardless of propensity for violence). Therefore, the Court need not consider the specific circumstances of his offense.

Even were the Court to rely on the historical theory of dangerousness, Defendant's as-applied challenge still fails. When considering as applied challenges, the Eighth Circuit renounced the need to conduct felony-by-felony determinations regarding the constitutionality of § 922(g)(1) as applied to a particular defendant. *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) (citing *Jackson*, 69 F. 4th at 501). In doing so, it noted "history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." *Jackson*, 69 F.4th at 504. "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." *Id.* The Eighth Circuit later stated that "key to th[is] decision" were

the assurances by the Supreme Court that nothing casts doubt on the prohibition on possession of firearms by felons. *Veasley*, 98 F.4th at 909 n. 2 (citing *Heller*, 554 U.S. at 626); *Bruen*, 501-502. While *Veasley* contemplates circumstances in which the Court may need to consider a defendant's individual conduct when evaluating an as-applied challenge, the present case is distinguishable. Unlike *Veasley*, a defendant convicted under § 922(c)(1)(A) must first be found guilty of drug trafficking, an action the Eighth Circuit has recognized is in itself, dangerous. *Graham*, 779 App'x at 412. That was not the hypothetical scenario considered in *Veasley* wherein the court provided a scenario involving a "80-year old grandmother who uses marijuana for a chronic medical condition and keeps a pistol tucked away for her own safety." *Veasley,* 98 F.4th at 917-918. Thus, the Court finds § 922(c)(1)(A) more analogous to being a felon in possession of a firearm, as considered in *Jackson*. Moreover, the Court relies on the Supreme Court's assurances that the Second Amendment "is not a right to keep and carry any weapon whatsoever in any manner whatsoever," *Heller*, 554 U.S. at 626, and *Bruen* reaffirms that the right is subject to certain reasonable, well-defined restrictions. *Jackson*, 69 F. 4th at 501. Thus, in accordance with historical regulations, Congress's prohibition on a specific category of individuals'—drug traffickers—ability to possess weapons does not run afoul of the constitution, even without an individual finding of dangerousness. For the reasons set forth herein, the undersigned finds Defendant's as-applied challenge should fail.

Because § 922(c)(1)(A) is "consistent with the Second Amendment's text and historical understanding," the court finds that it is constitutional. *Bruen*, 142 S. Ct. at 2131.

Accordingly,

8

IT HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to dismiss, Filing No. 42, be denied.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

FURTHER, IT HEREBY IS ORDERED,

1. Defendant's motion for hearing on his motion to dismiss, Filing No. 60, is denied.
2. The telephone conference currently scheduled for May 28, 2024, is <u>continued</u> and will be held before the undersigned magistrate judge at **11:00 a.m.** on **June 6, 2024** to discuss setting any change of plea hearing, or the date of the jury trial and deadlines for disclosing experts as required under Rule 16. Counsel for all parties shall use the conferencing instructions provided by the court to participate in the call.

Dated this 22nd day of May, 2024.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge