IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | Plaintiff, | **4:23CR3045** |
| vs. | | |
| JOHN FRANCIS, | | **MEMORANDUM AND ORDER** |
| | Defendant. | |

This matter is before the Court on Defendant's Motion for New Trial (Filing No. 107). For the reasons explained below, the motion will be denied.

## BACKGROUND

On April 19, 2023, Defendant was indicted for violating 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, and (b)(1)(C) and 18 U.S.C. § 924(c)(1)(A)(i), carrying or using a firearm during and in relation to a drug trafficking crime. (Filing No. 1.) The Indictment stemmed from a traffic stop that resulted in methylenedioxymethamphetamine ("MDMA") and a firearm being found in Defendant's rental vehicle.

On March 4, 2024, Deputy Tyson Osborn attempted to pull Defendant over on Interstate 80 for driving over the fog in in violation of Neb. Rev. Stat. § 60-6,142. Defendant did not pull over when Deputy Osborn activated his emergency overhead lights. Deputy Osborn continued to pursue the vehicle, and he was joined by other law enforcement agencies during the pursuit. The pursuit went on for around fifty miles and lasted approximately thirty minutes, with speeds averaging over 100 MPH. After a Nebraska State Trooper threw spike strips onto the interstate and punctured the tires of Defendant's vehicle, the vehicle came to a stop in the middle of the

interstate and Defendant exited the vehicle with his hands in the air.  Defendant was the driver and sole occupant of the vehicle.  It was later determined that the vehicle was a rental.[1]

Defendant was arrested for flight to avoid arrest, at which time approximately $2,000 was found in his pocket.  The vehicle was searched, and Defendant's cell phone and a handgun were found in the center cupholder of the vehicle.  In a duffle bag on the passenger seat, officers located clothes, approximately $4,000 and over 6 pounds of MDMA.  Rubber bands and hair ties were also in the vehicle, along with heat-sealer bags which were on the back floorboard of the vehicle. No other clothes were found in the vehicle.  The money in Defendant's pocket was rubber-banded like the money found in the duffle bag.

On February 1, 2024, Defendant filed a Motion to Suppress (Filing No. 43), seeking an order suppressing all evidence obtained from the traffic stop and subsequent search of the vehicle. Defendant argued there was no probable cause to stop his vehicle because he did not violate Neb. Rev. Stat. § 60-6,142 (driving on the shoulder of a highway) or commit any other traffic violations. A hearing regarding Defendant's Motion to Suppress was held before Magistrate Judge Jacqueline DeLuca on March 14, 2024.

Following the hearing, Magistrate Judge DeLuca issued an Amended Findings, Recommendation, and Order (Filing No. 59), recommending to Senior United States District Judge John Gerrard that Defendant's Motion to Suppress be denied. Magistrate Judge DeLuca's order noted Defendant's belief that the case turned on whether he violated Neb. Rev. Stat. § 60-6,142 when he allegedly drove on, but did not cross, the white fog line that separates the road from the shoulder. Magistrate Judge DeLuca concluded it was unnecessary to address that issue, as Defendant committed multiple other traffic violations that gave officers probable cause to stop and arrest him—including eluding arrest. Magistrate Judge DeLuca's order expressly advised Defendant that failing to file an objection to her order as provided in this Court's local rules could be held to be a waiver of any right to appeal the district judge's adoption of the order.  (Filing No.

---

[1] The rental vehicle was not in Defendant's name.  The individual that rented the vehicle was Mark Dahma. (Exhibit 9.)  There was an Ontario driver's license in the vehicle in the name of Mark Dahma. (Exhibit 10.) Defendant did not have a driver's license or any identification on his person or in the vehicle in his name.

58.)  Defendant did not object to the order, and Senior Judge Gerrard adopted Magistrate Judge DeLuca's recommendation, and denied Defendant's Motion to Suppress.  (Filing No. 62.)

On May 5, 2024, Defendant filed a Motion to Dismiss Count II of the Indictment. (Filing No. 60.) Defendant argued that 18 U.S.C. § 924(c)(1)(A)(i) was unconstitutional both on its face and as applied to the facts of the case based on the Supreme Court's ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  Magistrate Judge DeLuca entered a Findings Recommendation and Order (Filing No. 63) on May 22, 2024, finding that § 924(c)(1)(A) was constitutional and recommending to Senior Judge Gerrard that Defendant's Motion to Dismiss be denied. Magistrate Judge DeLuca's order pertaining to the Motion to Dismiss advised Defendant that failing to file an objection as provided in the local rules could be held a waiver of any right to appeal the adoption of the order.  Defendant did not object to Magistrate Judge DeLuca's order. On June 6, 2024, Senior Judge Gerrard adopted Magistrate Judge DeLuca's recommendation (Filing No. 66), and denied Defendant's Motion to Dismiss.   (Filing No. 66.)

This case proceeded to a jury trial on November 12, 2024.  (Filing No. 92.)  During the trial, Sergeant William Koepke ("Sgt. Koepke") with the Lincoln Lancaster County Narcotics Task Force testified regarding drug trafficking. He explained the connections between guns, money, rubber bands, hair ties, heat-sealer bags, and the drug trade. He informed the jury that Interstate 80 is a common drug corridor.  He also testified that drug traffickers commonly use rental vehicles not rented in their names. He explained the value of the MDMA, how it would be broken down into doses, and the number of doses that could be produced from the MDMA in Defendant's rental vehicle.  The jury found Defendant guilty on both counts on November 13, 2024.  (Filing No. 100.)

## DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 33(a), the Court may vacate any judgment and grant a new trial "if the interests of justice so requires." Fed. R. Crim P. 33(a).  In examining a motion for a new trial, the court "may weigh the evidence and judge the credibility of the witnesses to determine whether there was a miscarriage of justice that warrants a new trial." *United States v. Waloke*, 923 F.3d 1152, 1156 (8th Cir. 2019).  However, motions for new trials are generally disfavored, therefore a jury's verdict must be allowed to stand unless "the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred."

*United Stated v. Clayton*, 787 F.3d 929, 935 (8th Cir. 2015) (quotation omitted). The "decision whether to grant or deny a motion for a new trial lies within the discretion of the district court." *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir. 1984).

Defendant cites several grounds for a new trial. Each will be addressed separately below.

### 1. Weight of the Evidence

Defendant argues a new trial is warranted because the weight of the evidence does not support a conviction in this case. Defendant maintains there was no evidence presented at trial connecting Defendant to the MDMA or gun recovered from inside the rental vehicle. Defendant claims the jury's conclusion that he knew about the drugs and firearm in the vehicle was based on speculation. The Court disagrees.

"A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." *United States v. Seals*, 915 F.3d 1203, 1205 (8th Cir. 2019). "The government is given the benefit of reasonable inferences, so long as they are not conjecture and speculation." *United States v. Boesen*, 491 F.3d 852, 858 (8th Cir. 2007).

"To convict an individual of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), the government has the burden of proving beyond a reasonable doubt that [defendant] both knowingly possessed and intended to distribute the drugs." *United States v. Morales*, 813 F.3d 1058, 1065 (8th Cir. 2016) (quotation omitted). "Knowledge can be inferred from the surrounding circumstances. For instance, a defendant's control and dominion over a vehicle can indicate knowledge of its contents." *United States v. Wilson*, 619 F.3d 787, 796 (8th Cir. 2010) (quotation omitted). "[I]ntent to distribute may be inferred from circumstantial evidence such as a large sum of cash, and a quantity of a controlled substance." *United States v. Johnson*, 977 F.2d 457, 458 (8th Cir. 1992) (quotation omitted).

The evidence shows Defendant knowingly possessed the MDMA and the firearm. Defendant was the driver and sole occupant of the vehicle, which supports knowledge. S*ee United States v. Flores*, 474 F.3d 1100, 1105 (8th Cir. 2007) ("[Defendant's] dominion over the vehicle alone could support a finding that he knowingly possessed the methamphetamine"). Moreover, the

MDMA was found in a duffle bag on the front passenger seat of the vehicle, that also contained clothing and a large amount of cash. The cash in the duffle bag was banded-together with a rubber band like the money found on Defendant's person. The firearm was in the same cupholder as Defendant's cell phone. Not only this, but Defendant's vehicle was stopped following a lengthy high-speed chase on the interstate—indicating consciousness of guilt.

And, according to expert testimony presented at trial, Defendant had items with him that are often used in the drug trade, such as large amounts of cash, rubber bands, hair ties, and heat sealer bags. He was also driving a rental vehicle on the interstate—which, again according to expert testimony, is indicative of drug trafficking. The evidence sufficiently established that Defendant knowingly possessed the contraband. The jury's verdict was not based on speculation or conjecture. Therefore, Defendant's request for a new trial based on weight of the evidence will be denied.[2]

### 2. Prosecutorial Misconduct

Defendant also alleges prosecutorial misconduct because the prosecutor spoke with a witness during a recess in the witness' testimony, in violation of a sequestration order. However, a sequestration order was not entered in this case because no one asked for one.

Moreover, even if a standard sequestration order had been entered, the prosecutor's conduct would not have violated it. In _U.S. v. Calderin–Rodriguez_, 244 F.3d 977, 985 (8th Cir.2001), the Eighth Circuit determined that Federal Rule of Evidence 615, which then provided that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony

---

[2] Defendant relies on _United States v. Pace_, 922 F.2d 451, 452 (8th Cir. 1990) and _United States v. Parker_, 871 F.3d 590, 603 (8th Cir. 2017) to support his argument that there was insufficient evidence to connect him to the MDMA and firearm. In each of those cases, the court concluded that the government failed to sufficiently prove that the defendant possessed the contraband at issue. However, those cases are distinguishable from the situation at hand, and not persuasive here. In each of those cases, the respective defendant was not the sole occupant, in the vehicle. Further, in _Pace_, the other occupant of the vehicle testified that the defendant did not know about the contraband, and in _Parker_, there was no evidence the subject firearm was in the vehicle prior to (or during) a chase to evade arrest, or that anyone had seen the defendant in possession of the firearm. Here, as discussed above, there is a significant amount of other evidence connecting Defendant to the contraband, unlike the defendants in _Pace and Parker_. Defendant's case more closely resembles _United States v. Young_, 68 F.4th 1095, 1098-1099 (8th Cir. 2023), in which the defendant was convicted of possession with intent to distribute drugs where he had been the driver and sole occupant of a rental vehicle, in which law enforcement had found bags of clothing, as well as drugs in the center console of the vehicle.

of other witnesses," does not "by its terms forbid an attorney from conferring with witnesses during trial."

In *Calderin*, the Eighth Circuit also concluded that witnesses communicating with each other in violation of the sequestration order was not reversible error because the defendant was not prejudiced. *See also* Poyner v. State of Iowa, 990 F.2d 435, 439 (8th Cir.1993) (refusing to grant mistrial based on witness' admitted violation of sequestration order because defendant showed no prejudice). Here, there was no sequestration order, and even if there were, there is no indication that Defendant was prejudiced by the prosecutor's conversation with the witness. Therefore, Defendant's request for a new trial based on alleged prosecutorial misconduct will be denied.

### 3. Hearsay

Defendant argues a new trial is necessary because the Court abused its discretion by allowing hearsay testimony over Defendant's objection. However, Defendant has not pointed to any specific testimony that should not have been allowed, nor has he cited any authority for the proposition that admission of hearsay testimony justifies a new trial. *See* NECrimR. 12.3(b) ("A party's failure to brief an issue raised in a motion may be considered a waiver of that issue"). Defendant's bald assertion that he was prejudiced by erroneous admission of hearsay evidence does not support his request for a new trial.

### 4. Motion to Suppress

Defendant argues a new trial is warranted because the Court erred in denying his Motion to Suppress. As Defendant argued in his Motion to Suppress, Defendant contends there was no probable cause for the traffic stop because Defendant did not violate Neb. Rev. Stat. § 60-6,142 when his tires merely touched the white fog line. Defendant argues that for this traffic law to be violated, tires must cross the white fog line and be on the shoulder.

Defendant was specifically advised in Magistrate Judge DeLuca's Findings and Recommendation that failure to object to her order could constitute a waiver of his right to object to the district court's judge's adoption of her order. Defendant failed to do so. Therefore, Defendant has waived his right to object from the district judge's order adopting Magistrate Judge DeLuca's finding of fact. *See* NECrimR 59.2(e) ("Failure to object to a finding of fact in a

magistrate judge's recommendation may be construed as a waiver of the right to object from the district judge's order adopting the recommendation of the finding of fact").  Also, the evidence overwhelming shows law enforcement had probable cause to stop his vehicle.

Taking aside the issue of whether Defendant violated Neb. Rev. Stat. § 60-6,142, Defendant clearly committed multiple other traffic infractions which justified the traffic stop and subsequent search of his vehicle.  Most significantly, Defendant lead officers on a lengthy high-speed chase—traveling speeds over 100 MPH—down the interstate. Defendant's flight to avoid arrest provided probable cause to stop him, regardless of whether he violated Neb. Rev. Stat. § 60-6,142. *See United States v. Pickens*, 58 F.4th 983, 984 (8th Cir. 2023) ("Resistance to even an illegal stop or arrest can furnish grounds for a legitimate arrest").

Further, Defendant did not object to the evidence obtained from the vehicle when it was introduced at trial. An error by the trial court, even one affecting a constitutional right, may be forfeited—that is, not preserved for appeal—"by the failure to make timely assertion of the right." *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "To preserve an error for appellate review, an objection must be timely and must clearly state the grounds for the objection." *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (quotation omitted). For all these reasons, the denial of Defendant's Motion to Suppress does not supply grounds for a new trial.

### 5.  Motion to Dismiss

Defendant also argues he should be given a new trial because the Court erred by not granting his Motion to Dismiss Count II of the Indictment.  Defendant again argues that 18 U.S.C. § 924(c)(1)(A) is unconstitutional under the Supreme Court's ruling in *Bruen*, in which the Supreme Court found that a firearm regulation must be "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Defendant contends § 924(c)(1)(A) violates the Second Amendment because the prohibition of possession of a firearm in relation to a drug trafficking crime is inconsistent with the Nation's tradition of firearm regulation.

As a preliminary matter, Defendant was specifically advised in Magistrate Judge DeLuca's Findings and Recommendation that failure to object to her order could constitute a waiver of his

right to object to the district court's judge's adoption of her order. Defendant failed to do so. *See* NECrimR 59.2(e) ("Failure to object to a finding of fact in a magistrate judge's recommendation may be construed as a waiver of the right to object from the district judge's order adopting the recommendation of the finding of fact"). Senior Judge Gerrard adopted the Magistrate Judge's Findings and Recommendation on June 6, 2024.

Notwithstanding his failure to object to Magistrate Judge DeLuca's Findings and Recommendation, the evidence adduced at trial showed that Defendant was an illegally, undocumented person in this country. In *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023), the Eighth Circuit Court of appeals found that "unlawful aliens are not part of 'the people' to whom the protections of the Second Amendment extend." *See also United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011) (finding that protections of the Second Amendment do not extend to aliens illegally present in this country). Therefore, Defendant has no rights under the Second Amendment.

Further, there is no support for the proposition that § 924(c)(1)(A) is unconstitutional post-*Bruen*. Section 924(c)(1)(A) criminalizes "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." *Bruen* emphasized that the right to carry and possess a firearm is vested in "law-abiding citizens." *Bruen*, 142 S.Ct. at 2122. "Given that section 924(c)(1)(A) requires as an element that the accused used or carried a weapon during and in relation to any crime of violence or drug trafficking crime, individuals subject to this provision are—by definition—not law-abiding citizens." *United States v. Maiden*, No. 23-CR-107 (PJS/DJF), 2023 WL 5353435, at *2 (D. Minn. July 20, 2023), *report and recommendation adopted*, 2023 WL 5348865 (D. Minn. Aug. 21, 2023) *See also United States v. Bryant*, 711 F.3d 364, 365-66 (2d Cir. 2013) (concluding that "the Second Amendment does not safeguard the unlawful purpose of possessing a firearm in furtherance of drug trafficking"); *United States v. Burgess*, No. 22-1110/22-1112, 2023 WL 179886, at *5 (6th Cir. Jan. 13, 2023) (rejecting post-*Bruen* Second Amendment challenge to § 924(c) because *Bruen* supported the conclusion that the Second Amendment "did not extend to possession of weapons for unlawful purposes"). Defendant is not entitled to a new trial based on the argument that § 924(c)(1)(A) is unconstitutional—which it plainly is not.

8

Accordingly,

**IT IS ORDERED** that Defendant's Motion for New Trial (Filing No. 107) is denied.

Dated this 10th day of March, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge